IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POST ACUTE ANALYTICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> CVS PHARMACY, INC. and AETNA LIFE INSURANCE COMPANY, <br><br> Defendants. | C.A. No.  23-cv-00974-UNA <br><br> **REDACTED - PUBLIC VERSION** |

# COMPLAINT

Plaintiff Post Acute Analytics, Inc. ("PAA") brings this action against Defendants CVS Pharmacy, Inc. ("CVS") and Aetna Life Insurance Company ("Aetna," and together with CVS, "Defendants"), arising from their willful failure to pay the fees they owed to PAA for contracted services it performed between January 2022 and July 2023 with respect to Defendants' Medicare Advantage Plans.

In support of this Complaint, PAA alleges as follows:

## PARTIES

1. Plaintiff PAA is a Delaware corporation with a principal place of business at 1760 S. Stemmons Freeway, Suite 400, Lewisville, Texas.  PAA is a health information exchange ("HIE") company whose technology platforms combine predictive analytics, artificial intelligence ("AI"), and data integration with electronic medical record ("EMR") systems to establish patient monitoring across the continuum of care, thereby enabling healthcare providers and payors to make timely coordination of care decisions, improve quality outcomes for patients, and reduce the total cost of care in post-acute settings.

2. Defendant CVS is a Rhode Island corporation with a principal place of business at One CVS Drive, Woonsocket, Rhode Island. CVS is a retail corporation and the largest pharmacy chain in the United States. CVS is also the parent company of Defendant Aetna.

3. Defendant Aetna is a Connecticut corporation with a principal place of business at 151 Farmington Avenue, Hartford, Connecticut. Aetna is a health insurance and managed health care company and a subsidiary of Defendant CVS.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a). This is an action in which the parties are completely diverse and the amount in controversy exceeds $75,000.

5. This Court has personal jurisdiction over Defendant CVS because it is a foreign entity authorized to transact business within the state of Delaware and, on information and belief, regularly conducts business within, and has systematic and continuous contact with, this district, both in its own capacity and through its affiliates and/or subsidiaries.

6. This Court has personal jurisdiction over Defendant Aetna because, on information and belief, it regularly conducts business within, and has systematic and continuous contact with, this district, both in its own capacity and through its affiliates and/or subsidiaries.

7. Pursuant to 28 U.S.C. § 1391(b)(2), venue in this district is proper because a substantial part of the events or omissions giving rise to the claims occurred in Delaware. Additionally, in their contract, the parties agreed that ████████████████ .

## FACTUAL BACKGROUND

8. PAA is a HIE company whose technology platforms combine predictive analytics, AI, and data integration with EMR systems to establish patient monitoring across the

continuum of care.  PAA's solutions enable healthcare providers and payors to gain valuable insights on patients in the post-acute care setting, including up-to-date patient demographics, admit/discharge/transfer status, and diagnostic information.  By combining those insights with predictive analytics and AI, PAA's platforms help providers and payors make timely and informed care coordination decisions, improve quality outcomes for patients, and reduce the total cost of care during post-acute care.

9. On September 29, 2021, CVS and PAA entered into a certain agreement entitled the Anna Network Sponsor Agreement (the "Agreement").  CVS entered the Agreement on behalf of itself and its affiliates, including Aetna.

10. Regarding the distinction between CVS (as the "Sponsor") and Aetna (as its "Affiliate"), the Agreement states the following:



11. The Agreement further provides that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

3

12. The Order Form at Exhibit A to the Agreement (the "Order Form") confirms that ███.

13. Under the Agreement, PAA agreed to ███

███

███

███

███

███

14. Anna is a web-based HIE application and web portal that enables health care payors and providers to share, monitor, and manage patient care processes, quality, transitions, outcomes, and costs. ███

15. Pursuant to the Agreement, CVS agreed to ███

███

███

16. Regarding PAA's compensation for these services, the Agreement provides that:

███

17. The Order Form specifies that:

███



18. The Agreement provides that

19.

20. The Order Form dictates that

21. A little context may be helpful. Under Medicare Advantage, Medicare pays Aetna a fixed amount, based on membership totals, to compensate Aetna for the expected costs associated with the healthcare needs of members enrolled in Aetna's Medicare Advantage plans. Thus, if Aetna's Medicare Advantage members remain healthy and Aetna incurs lower than expected healthcare costs as a result, Aetna stands to earn more profit. On the other hand, if Aetna's Medicare Advantage members require more care, or the care is more costly, the healthcare costs incurred by Aetna will be higher and Aetna's profits will be lower. Accordingly, if PAA's technology helps Aetna and its network of healthcare providers keep patients healthier and out of post-acute care settings, Aetna will save on healthcare costs and earn

more profit. Notably, Aetna may also earn substantial additional profits if it qualifies for certain incentives provided by Medicare for higher patient satisfaction, quality, and performance.

22. The Order Form establishes ███████████████████████████
███████████████████████████
███████████████████████
██████████████

23. The Order Form further establishes that ████████████████
███████████████████████
████████████████████████████
████████████████████████████
████████████████████████████

24. The Order Form provides that █████████████████████
███████████████████████████
███████████████████████████
████████████████████████████
███████████

25. The Order Form states that ██████████████████████
████████████████████████████
████████████████████ The Order Form sets forth ██████████

---

[1] "Skilled nursing" is medical care for the treatment, management, and observation of a condition, which can only be safely and effectively performed by, or under the supervision of, skilled nursing or therapy professionals. A "skilled nursing facility" is an institution, such as a skilled nursing home or rehabilitation center, which is primarily engaged in providing skilled nursing care and related services for residents who require medical or nursing care, or rehabilitation services for the rehabilitation of injured, disabled, or sick persons.

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

26. In other words, the parties agreed that █████████████████████████████

██████████████████████████████████████████████████████████████████████████

███████████████████████████████

27. The Agreement specifically sets forth ████████████████████████████

██████████████████████████████████████

- ████████████████████████████████████████████████
  - ███████████████████████████████
  - █████████████████████████████████████████████
- ██████████████████████████████████
- ████████████████████████████████████████████████

████████████████████████████

28. The parties agreed on September 29, 2021, the same day they signed the Agreement, that ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████████

29. On November 4, 2021, the parties agreed ██████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

7

30. On January 28, 2022, the parties agreed ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

31. On June 8, 2022, the parties executed a ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

32. PAA duly invoiced Aetna for the ▆▆▆▆▆▆ accrued during the course of the Agreement for the ▆▆▆▆▆▆, as applicable, from January 2022 to July 2023. Aetna deliberately delayed, but ultimately made payment of the ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ for the period from January to July 2023.

33. At all times during the term of the Agreement, and by a wide range of metrics, PAA performed successfully and generated significant savings for Aetna. From January 2022 through July 2023, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. PAA's services also brought significantly increased efficiencies to Aetna's Medicare Advantage operations and had positive impacts on patient and provider satisfaction.

34. As expected, this was reflected ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

35. ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████

36. ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████

37. Under the Agreement, ████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████

38. PAA has duly invoiced Aetna for the ████████████s that have accrued for the ████████████████████████████ for the period from January 2022 through April 2023. The accrued ████████████ for the months of May, June, and July

2023 will be invoiced in due course after receipt of Aetna's final claims data on the ▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

39.    Notwithstanding that the parties achieved the shared success contemplated in their Agreement, in or around September 2022, Aetna surprised PAA by declaring that Aetna refused to pay the ▓▓▓▓▓▓▓▓▓▓▓ for which the parties had contracted.  After Aetna had received the benefit of the savings that PAA had achieved, Aetna surprisingly claimed it had not accounted in its budget for the ▓▓▓▓▓▓▓▓▓▓▓ to PAA that had been accruing since the ▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and was unable to pay them.

40.    For context, according to CVS Health's Annual Report and published articles, Aetna's revenues for 2022 were $91.4 billion, an increase of almost $10 billion from the year before.

41.    Aetna has, to date, withheld from PAA all of the ▓▓▓▓▓▓▓▓▓▓▓ it owes – even with respect to the ▓▓▓▓▓▓▓ on which the parties have documented in writing their agreement on the ▓▓▓▓▓▓▓▓▓▓▓.  The ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ for the period from January 2022 through March 2023 have already been billed and total $▓▓▓▓▓▓▓.  That figure is expected to increase to $▓▓▓▓▓▓▓, once the data is finalized and the ▓▓▓▓ ▓▓▓▓▓▓▓ calculated for the April through July 2023 period.

42.    Aetna has also refused to calculate the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓ by refusing, without justification or reason, to apply the same ▓▓▓▓▓▓ methodology which Aetna had previously agreed was appropriate in calculating the ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  Aetna has since claimed that its bad faith refusal to agree on the calculation of the ▓▓▓▓▓▓ should mean that it is free of its contractual obligation

10

to pay PAA the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, despite the 9+ months that it benefited from PAA's services in those Markets.

43. Aetna then demanded that PAA renegotiate the financial terms of the Agreement. As an early stage company dwarfed in size by CVS/Aetna, PAA was anxious to continue the relationship with Aetna and agreed to discuss renegotiating the terms to try to accommodate Aetna's claimed financial constraints in exchange for, among other things, an agreement on some alternative form of performance-based bonus structure to be paid to PAA. In September 2022, Aetna asked PAA to hold off on invoicing the ▮▮▮▮▮▮▮▮ it was owed. Wishing to be a good partner, PAA agreed to do so.

44. Between September 2022 and January 2023, the parties discussed the parameters of a potential amended Agreement, including at several meetings in which they discussed the framework for the alternative form of performance-based bonuses sought by PAA. However, during the attempts to negotiate an amendment to the Agreement, it became clear that Aetna sought to coerce PAA into waiving ▮▮▮▮▮▮▮▮ to which it was contractually entitled without offering any alternative form of bonus structure, as sought by PAA. Aetna further threatened that it would also not pay the ▮▮▮▮ it owed to PAA for 2023. If it were to agree to amend the existing contract, PAA sought to have Aetna commit to a contract with PAA going forward for some period of time. Ultimately, Aetna's proposal, in the form of a proposed contract amendment, was that PAA agree to waive all of its already accrued ▮▮▮▮▮▮ and receive no ▮▮▮▮▮▮▮▮ or any other alternative form of performance-based bonus payments of any type going forward. Aetna further proposed a cap of $▮▮▮▮▮ on PAA's total fees; *i.e.*, less than what PAA was owed in ▮▮▮▮▮ under the existing contract for the seven months from January to July 2023 alone. Moreover, Aetna in its proposal would have not

11

only maintained ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, but could do so with 90 days' notice, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

45.     In short, Aetna's proposed amendment sought to coerce PAA into waiving millions in fees it had already earned and to reduce its future fees from those already agreed upon under the existing contract, but offered PAA no consideration of any kind in return and no continuing commitment from Aetna to a contract with PAA beyond 90 days going forward. Aetna's proposal would have eliminated any compensation to PAA beyond the capped ▓▓▓▓ and would have actually reduced ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

46.     The parties were unable to come to an agreement to amend the existing Agreement.

47.     On February 2, 2023, Aetna sent PAA a notice of termination ▓▓▓▓▓▓▓▓▓ of the Agreement, indicating that it would terminate effective July 31, 2023. ▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

48.     To date, Aetna has still not paid – and has expressly refused to pay – any portion of the ▓▓▓▓▓▓▓▓▓▓ owed to PAA under the Agreement for the entire duration of the contract from January 2022 through July 2023.  The total amount owed for the ▓▓▓▓▓▓▓ ▓▓▓ accrued from January 2022 through March 2023 for the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  That figure is expected to increase to $▓▓▓▓▓▓▓ once the data is finalized and the ▓▓▓▓▓▓▓▓▓▓▓ calculated for the April through July 2023 period for those ▓▓▓▓▓▓.  While Aetna has in bad faith refused to agree to calculate the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, the additional ▓▓▓▓▓▓▓▓▓▓▓▓ accrued during the

12

period from October/November 2022 through July 2023 for those ▇ are expected to be approximately $▇ ▇.

## COUNT I
## BREACH OF CONTRACT

49. PAA repeats and re-alleges the foregoing allegations and incorporates them by reference as if fully set forth herein.

50. The Agreement between PAA and Defendants constitutes a valid and binding contract.

51. Under the Agreement, ▇ ▇ ▇ ▇.

52. The Agreement provides that, ▇ ▇ ▇.

53. PAA's fees began accruing on ▇ ▇ ▇ ▇ ▇.

54. The Agreement provides that ▇ ▇.

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████

55. Under the Agreement, ████████████████████████████████████

███████████████████████████████████████

56. Aetna received a number of invoices for the ██████████████ accrued for the ██████████████████████████████████████ commencing on February 24, 2023.  On August 4, 2023, PAA invoiced Aetna for the ████████████ accrued through March 31, 2023.  PAA will invoice Aetna for the ████████████ accrued for April, May, June and July 2023 in due course, as Aetna's claims data for those periods is finalized.

57. From January to July 2023, Aetna received a monthly invoice for the ████████ ████████████████████████.  PAA invoiced Aetna for the ████████ for January through July, 2023 on February 10, 2023, February 14, 2023, March 13, 2023, April 11, 2023, May 23, 2023, June 20, 2023 and July 24, 2023, respectively.

58. Aetna has, to date, not paid any of the ████████████████████████████ ████████ and did not pay the ████████ owed for any of the months in 2023 until finally issuing a check dated August 7, 2023 shortly prior to the filing of this Complaint.

59. By the conduct described above, including, without limitation, their refusal to timely pay to PAA both:  (1) ████████████ that had accrued and are duly owed for the services provided in the ████████ for 2023; and (2) ████████████████████ that have accrued and are duly owed for the ██████████████████████████████████████████████████████, Defendants have breached the Agreement.  Defendants have further breached the Agreement by their refusal ██████████████████████████████████ to pay PAA the ████████████

14

███████████████████████, their bad faith refusal to calculate the ███████████

███, and their bad faith refusal to agree to the same █████ methodology previously

approved by Defendants for the ████████████████████████████████████████.

60.  PAA has fully complied with, and fully performed, its obligations under the Agreement.

61.  As a direct and proximate result of Defendants' breach of the Agreement, PAA has incurred damages in an amount to be determined at trial, which will include the estimated $████████████████████████████████████████████ plus the approximately $████████ expected to be owed for the ██████████████████ ██████████████████████████, plus interest, costs, and attorneys' fees.

## COUNT II
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

62.  PAA repeats and re-alleges the foregoing allegations and incorporates them by reference as if fully set forth herein.

63.  The Agreement between PAA and Defendants constitutes a valid and binding contract.

64.  Delaware law implies a covenant of good faith and fair dealing into every contract.  The covenant of good faith and fair dealing requires each party to act in such a manner as to effectuate the reasonable contractual expectations of the other party and to ensure that the other party receives the full benefit of its performance.  The covenant prohibits one party from acting in a manner that frustrates the other party's ability to obtain the benefits to which the parties agreed, including by refusing to act reasonably and in good faith when exercising any discretion afforded to it under the contract.

65. As set forth above, Defendants secured PAA's agreement to provide them with ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ by contracting to pay PAA both a ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

66. If found not to be an express obligation, Defendants undertook implied obligations to act reasonably and in good faith to agree on a calculation of the ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, as well as to agree on a calculation of the ▓▓▓▓ ▓▓▓▓▓▓▓▓▓ to be paid to PAA premised on ▓▓▓▓▓▓▓▓▓▓.

67. Defendants fostered PAA's reasonable expectations that they would fulfill their express and implied contractual duties and act in good faith to allow PAA to receive the contractual benefits to which the parties had agreed. Instead, Defendants have acted in bad faith in an effort to deliberately frustrate PAA's right to the fees to which the parties had agreed.

68. Defendants have acted unreasonably, capriciously, and in bad faith, and have breached the implied covenant of good faith and fair dealing and thereby frustrated PAA's ability to receive the fruits of the bargain to which the parties had agreed.

69. As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, PAA has incurred damages in an amount to be determined at trial, which will include the estimated $▓▓▓▓▓▓▓ expected to be owed for the ▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓, plus the approximately $▓▓▓▓▓▓▓ expected to be owed for the ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, plus interest, costs and attorneys' fees.

<strong><u>COUNT III</u></strong>
<strong><u>QUANTUM MERUIT</u></strong>

70. PAA repeats and re-alleges the foregoing allegations and incorporates them by reference as if fully set forth herein.

71.  On June 8, 2022, Defendants executed a [REDACTED] [REDACTED] [REDACTED].

72.  From October/November 2022 to July 2023, PAA performed services for Defendants in [REDACTED], with the reasonable expectation that Defendants would pay both the [REDACTED] and the [REDACTED] agreed upon, and Defendants, understanding that expectation, accepted the benefit of those services.

73.  Defendants have in bad faith: refused to pay PAA the [REDACTED] earned for its work in those [REDACTED], refused to calculate the [REDACTED], and refused to agree to apply the same [REDACTED] methodology previously approved by Defendants to calculate the [REDACTED].

74.  To the extent the Court does not find that PAA has an adequate remedy at law and/or grant PAA injunctive relief establishing [REDACTED] [REDACTED] by applying the same methodology Defendants approved [REDACTED] [REDACTED], PAA in the alternative is entitled to recover the fair market value of its services under *quantum meruit* in an amount to be determined at trial.

**COUNT IV**

**UNJUST ENRICHMENT**

75.  PAA repeats and re-alleges the foregoing allegations and incorporates them by reference as if fully set forth herein.

76.  On June 8, 2022, Defendants executed a [REDACTED] [REDACTED]

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇.

77.     From October/November 2022 to July 2023, PAA performed services for Defendants in ▇▇▇▇▇▇▇▇ with the reasonable expectation that the Defendants would pay both ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, and Defendants, understanding that expectation, accepted the benefit of those services.

78.     In an effort to avoid paying pursuant to the Agreement for the services that PAA has provided, Defendants have arbitrarily, capriciously, and in bad faith refused to pay PAA the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ earned for its work in ▇▇▇▇▇▇▇▇▇, refused to calculate the ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇, and refused to agree to apply the same ▇▇▇▇ methodology Defendants approved to calculate ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

79.     Defendants have been unjustly enriched by unjustly retaining both the benefit of PAA's services ▇▇▇▇▇▇▇▇▇▇ and the money Defendants agreed to pay PAA for its provision of those services, to the material loss of PAA.  Defendants' conduct is against the fundamental principles of justice or equity and good conscience.

80.     Defendants have been enriched by PAA's services ▇▇▇▇▇▇▇▇▇▇, and by the significant savings, increased efficiencies, and positive impacts on patient and provider satisfaction that PAA has generated for Defendants.

81.     PAA has simultaneously been impoverished by Defendants' refusal to pay PAA the agreed-upon fees for those enrichments.

82.     Defendants' enrichment and PAA's impoverishment have no justification and bear a relation with one another.

83. To the extent the Court does not find that PAA has an adequate remedy at law and/or grant PAA injunctive relief establishing the ▮▮▮▮▮ by applying the same ▮▮▮ methodology which the Defendants previously approved ▮▮▮▮▮, PAA in the alternative is entitled to recover for the value of its services in an amount to be determined at trial.

**WHEREFORE**, Plaintiff Post Acute Analytics, Inc. prays for the entry of the following relief:

a. That an injunction shall issue against Defendants establishing the ▮▮▮ ▮▮▮▮▮ using the same ▮▮▮ methodology which Defendants previously approved ▮▮▮▮▮ ▮▮▮▮▮ requiring Defendants to pay PAA the ▮▮▮▮▮ owed, as calculated ▮▮▮▮▮;

b. That judgment be entered in favor of PAA and against Defendants on each Count of the Complaint in an amount to be determined at trial;

c. That PAA be awarded the pre-judgment and post-judgment interest to which it is entitled;

d. That PAA be awarded its costs and attorneys' fees, in an amount to be determined at trial; and

e. That PAA be awarded such other and further relief as the Court deems just and proper.

Dated:  September 6, 2023                    Respectfully submitted,

*/s/ Monté T. Squire*
Monté T. Squire (No. 4764)
DUANE MORRIS LLP
1201 N. Market St., Suite 501
Wilmington, DE 19801
mtsquire@duanemorris.com

Of Counsel:

Gregory A. Brodek (*pro hac vice forthcoming*)
DUANE MORRIS LLP
88 Hammond Street, Suite 500
Bangor, ME 04401
gabrodek@duanemorris.com

Robert X. Zaffrann (*pro hac vice forthcoming*)
Patrick H. Foley (*pro hac vice forthcoming*)
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA 02110
rxzaffrann@duanemorris.com
phfoley@duanemorris.com

*Counsel for Plaintiff Post Acute Analytics, Inc.*